The Chief Justice
delivered the opinion of the Court:
This case comes here on appeal from the special term, holding an equity court. The defendant, Abram F. Barker, *157 and his wife, Sarah F. Barker, on the 29th of January, 1884, conveyed the property described in tjre bill to William W. Boarman and others in trust to secure Elizabeth E. Dyer the sum of $4,000. On the 15th of November, 1886, Barker and wife conveyed the same property to the same trustees to secure William P. S. Sangers the sum of $2,500. At the time of the filing of the bill, the above-mentioned trusts were due and unpaid.
On the 29th of August, 1887, Barker and wife conveyed the equity of redemption in the land or premises mentioned in the bill to Maria E. Gray, for the sum of $5,000, and in the conveyance to Gray, Barker covenanted to pay off the trusts above mentioned, as well as to pay. all the taxes due on the property. On the same day and at the same time the deed was executed to Gray, she, Gray, reconveyed the property in question to the deféndant, Sarah F. Barker, the wife of William F. Barker, for the named consideration of $3,800.
No claim is made that anything was paid by Mrs. Barker to Mrs. Gray at the time of the delivery of the deed to her by Mrs. Gray, nor was anything paid by Mrs. Gray to Barker or his wife at the time the deed was executed to her. The answers of Barker and his wife admit that neither of them paid anything to Gray as consideration for the property; but it is claimed by them in their answers and in their testimony that Mrs. Barker, instead of paying Mrs. Gray the consideration for the purchase of the property, paid $3,800 to Barker. ;
On the 6th of September, 1888, complainant obtained a judgment against the defendant, Abram F. Barker, for the sum of $2,100, with interest on $1,000, from August 29th, 1887, and on $1,000 from April 24th, 1888, until paid, and costs of suit. On the 21st of September, 1888, after the judgment had been rendered, and after the issue of execution and the placing of the same in the hands of the marshal, but before the return of the writ, Sarah F. Barker, with her husband, conveyed the same property to William W. Boar-man and others in trust to secure her personal and indi *158 vidual notes for the sum of $2,000, payable to the defendant, Charles S. Bradley.
The bill prays that a suitable person or persons may be appointed trustee or trustees to make sale of the real estate described in the bill, and the proceeds, after satisfying all lawful and bona fide preferred encumbrances thereon, be applied towards the payment of the complainant’s said judgment.
Upon the hearing we learned, and we find it stated in the complainant’s brief, that this property has been sold by the trustees named in the two first deeds of trust, and a sufficient amount of the proceeds applied to the discharge of these trusts, leaving a residue of $1,100, which is to await the result of this suit. So that, really, so far as the contention between the complainant and Bradley is concerned, it is as to which of these parties shall have the remainder of the proceeds of the sale of this property, being the sum of $1,100. It is important that this statement of the plaintiff should be correct, otherwise his rights might be different, in view of our conclusion, as to the rights of the parties in this case.
The testimony in the case shows, as I have already stated, that Barker and wife conveyed this property to Mrs. Gray after executing these two deeds of trust to Boarman, as before mentioned, and that on the same day and on the same occasion, Mrs. Gray conveyed the same property to Mrs. Barker. No money passed between the parties at the time, but it is claimed that there was an actual accounting and payment of money, which, in a general way, Mrs. Barker claimed to be her own separate money and part of her separate estate, to her husband, as the consideration for this conveyance. Her own evidence and that of her husband, however, shows that it was not, in law, her separate estate; that it had accrued from her earnings and savings of money which had been given to her by her husband, and moneys which she had received at the time of executing deeds for her husband, as a present, and that she gave this money to *159 her husband, and he invested it in real estate speculations, from which profits resulted which her husband credited her with in this settlement made at the time of the execution of these deeds; by which it was ascertained that he had what was claimed at the time they were testifying, was her money, in his hands, and that these credits of Mrs. Barker in the hands of her husband were exchanged and cancelled by the conveyance of the property in question to her.
We think it is very clear, under the decisions of this court and of the Supreme Court of the United States, that this was not her separate property. It was really money which the husband, in law, was entitled to, and it therefore could form no valid consideration, as against creditors of the husband, for this conveyance. In the first place, it is very clear that this was not a sufficient consideration for this property. Barker covenanted in his deed to Mrs. Gray that he would discharge the prior encumbrances represented by the two first deeds of trust, and pay all the taxes that might be due upon the property. It is manifest that the actual consideration which they say was paid, even if it had been paid out of the separate estate and money of Mrs. Barker, would have been so inadequate as that, for that reason, as against a bona fide creditor of the defendant, Barker, it would be a fraudulent salé, and subject to be set aside, possibly preserving, as a lien upon the property, the amount which Mrs. Barker might have paid, if she had paid it in good faith, and it was absolutely shown to be her separate estate.
We find, then, that this equity of redemption which the party undertook to convey to Mrs. Barker, through Mrs. Gray, was still, notwithstanding this conveyance, as a matter of law, in Barker, and should be so treated by this court in this case, sitting as a court of equity.
In the bill the complainant states that he is informed and believes, and therefore avers and charges that said defendant Bradley holds security for the indebtedness to him by said Barker, and that said Barker gave said deed of trust *160 after said judgment was recovered, for the express purpose of hindering and delaying the collection of said judgment, and in fraud of complainant’s just rights.
There is no testimony whatever in support of' that allegation, and it is not attempted to be proven by the complainant. The testimony of Mr. Bradley in the case completely disproves it, and shows that while he did, at one time, have security for the debt which was secured by the trust executed to him in this case, he subsequently surrendered those securities to Barker some months before the execution of the deed of trust to him upon the promise of Barker that he would execute to him a deed of trust, or otherwise secure him. It is furthermore shown, I think, beyond all question, that the debt due to Bradley, created by Barker for money loaned to him by Bradley, is a real, substantial and honest one, with no question of its validity between the parties. So that this charge made by the complainant in his bill falls to the ground.
That leaves the case in this situation: The deed of trust to Bradley was, on its face, executed to secure the payment of a promissory note executed by Mrs. Barker for $2,000.
We find that this property, to which Mrs. Barker had a deed, is not her separate property, and that she took nothing by the deed. We are really compelled to regard the deed as a nullity, and as conveying no interest as against the claim of the complainant in this case, or as against the claim of any other creditor outside of Barker himself. The equity of redemption still remains with him, notwithstanding this effort to convey it.
Of course, it results that Mrs. Barker could not execute any deed of trust to bind this property.
In the next place, her promissory note to Bradley was a nullity, and did not bind her nor her separate estate, if she had any. This is upon a well-settled’ principle, established by the decisions of this and the Supreme Court upon that subject.
But the evidence does show that there was an actual indebtedness on the part of Barker to Bradley. It is said *161 that this deed of trust was given to secure an antecedent debt, and therefore the transactions were not bona fide as against the claim of this complainant. There are two answers to that, and perhaps three. The first is that the evidence shows that this deed of trust was executed in pursuance of an agreement on the part of Barker, that if Bradley would release to him securities that he then held for the payment of this indebtedness, he, Barker, would secure him by the execution of a deed of trust, which promise we think would be binding, and forms a good consideration for the subsequent execution of the deed of trust. In addition to that, it is in evidence that at the time or about the time of the execution of this deed of trust, Bradley agreed to and did give to Barker a sum of money — how large it is not stated in the evidence — which Barker needed to pay interest on some of his indebtedness, if Barker would execute the deed of trust. That money would form a consideration for the execution of the deed of trust, and would relieve it of the imputation of being an antecedent debt.
We do not think that the complainant here stands in a situation in which he could make that sort of a defense to this deed of trust. He had no lien upon the property, and acquired none by his judgment. He made no levy Upon anything. He brings this suit here for the purpose of reaching equities upon the very ground that he has no lien or security for the payment of his judgment, that he is unable to reach any property belonging to the defendant, Barker, by execution, and that it is necessary for him to invoke the jurisdiction of a court of equity in order that he may reach alleged equities belonging to the defendant. This does not place him in the category of a purchaser, so as to enable him to make a question as to priority or preference with parties having liens antecedent to his commencing this suit. It is simply a question whether the claimed lien of Bradley is such a lien as should be maintained by a court of equity under the circumstances. If so, then it is superior to the claim of the complainant, who has not yet acquired a lien, but seeks to obtain one by a decree in this case.
*162 This deed of trust was executed for Bradley’s benefit to secure the debt of the husband, although the wife executed her note at the request of her husband. This is very analogous to the instance of the agent executing his note to secure the actual debt of the principal, in which case the creditor may hold either or both for the debt. Equity, will, when the circumstances seem to require it, disregard the form in which the parties may have chosen to clothe their transaction, and look to the real status established by the evidence.
In this case it is, in our judgment, established beyond all question that the defendants, Barker and wife, executed a deed of trust upon the equity of redemption in premises really belonging to Barker, to secure the payment of money to Bradley really owing by Barker to him. " As the evidence shows Bradley to be a bona fide creditor without knowledge of any fraudulent purpose on the part of Barker in conveying this property to. his wife, and that he in good faith accepted the deed of trust as a security for the payment of his debt, we are of the opinion that he is entitled ,to a lien paramount to the complainant, who has no lien nor right to have the property appropriated to pay his claim, beyond that which the court may give him in this case. Bradley has the elder, and therefore the better equity, and for this, if no other reason, must prevail.
Had this property not been sold, the right of the complainant would be subject to the three prior liens or incumbrances growing out of the execution of these three deeds of trust, to have the property sold and the money appropriated, first, to pay off these three incumbrances; secondly, to have the residue, if any, applied to his judgment. But as the property has been sold, this becomes a litigation for the residue of the fund left after satisfaction of the two first deeds of trust. As the satisfaction of Bradley’s lien will exhaust the residue of the fund, the proper decree'in the case is to dismiss the complainant’s bill.

The decree of the court below will be affirmed.